SMITH, Justice.
“The Board of Trustees/Directors and/or Deacons of Old Elam Baptist Church,”[1] the defendants below, petitioned this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order requiring the defendants to permit the “Concerned Members of Old Elam Baptist Church,” the plaintiffs below, to inspect the business and financial records of Old Elam Baptist Church. The defendants’ petition also requested that we direct the trial court to enter an order dismissing the plaintiffs’ action. We grant the petition in part and deny it in part.

Facts and Procedural History

Sometime before June 10, 2005, a dispute arose among the members at Old Elam Baptist Church, a church in Montgomery (“the Church”). Although the precise details of that dispute are not clear, it appears two factions developed in the Church. One faction consisted of approximately 50-80 individuals who refer to themselves as the “Concerned Members of Old Elam Baptist Church” (“the concerned members” or “the plaintiffs”). Another faction included the defendants, as well as other church members and the pastor of the Church, John Gilchrist.
Unable to resolve their differences, the two factions exchanged letters on June 10, 2005. Jason McCartha, the attorney for the defendants, wrote the following letter, which was hand delivered to some of the concerned members:
“I write you as the duly authorized representative and attorney as designated by the Pastor and the Deacons’ Board of Old Elam Missionary Baptist Church. The Pastor, in consultation with [the] Deacons’ Board, pursuant to the Scripture (1 Corinthians 5:5-12 and Matthew 18:15-17) and the Church’s governing document, entitled Standard Operating Procedure (i.e., Procedure 11(B) and Procedure III), hereby place you on probationary status for six (6) months with the stipulation that you not return to the Church property of Old Elam Missionary Baptist Church nor communicate in an evil, slanderous, or libelous manner against the Church or its leaders. This notice is to operate both as a spiritual notice (by the authority of the Pastor pursuant to the above Scripture and the Church’s governing documents) and as legal notice that you are not to trespass on Church property or the Pastor’s property. Any violation (i.e., trespass) will be considered a criminal trespass and a warrant for your *1081 arrest will be pursued until your probationary status is lifted by the Pastor and he personally gives you such notice.
“Furthermore, if you are not a member then you are permanently prohibited from entering and trespassing on the Church’s or Pastor’s property and you likewise will be prosecuted for criminal trespass for any violation of this notice unless otherwise personally notified by the Pastor in writing.
“If you immediately repent and turn from the actions that have ‘caused this Church to suffer’ then at the end of six (6) months the Pastor will review your Probationary status in accordance with Scripture and the Church’s Governing Documents for possible reinstatement and/or attendance privileges.”
MeCartha’s letter was also signed by Gilchrist and by the Church’s head deacon, Cornelius White.
The concerned members addressed a letter, also dated June 10, 2005, to the defendants. That letter was signed by attorney Donald G. Madison and stated, in pertinent part:
“This letter shall place the Trustees/Directors and/or Deacons of Old Elam Baptist Church of Montgomery on notice that I have been retained to represent the interest of a substantial group of your members who would like to exercise their legal rights as members of Old Elam Baptist Church to inspect and copy the complete books, records, accounts and minutes of the proceedings of the Old Elam Baptist Church, its directors, committees and bank accounts thereof.
“This request is made pursuant to [§] 10-3A-43, Code of Alabama 1975....
“The books and records which the members would like to inspect are:
“a) all budgets of Old Elam Baptist Church for the preceding two (2) years;
“b) all checking and/or savings accounts for the preceding two (2) years;
“c) all check registers for all checking and/or savings accounts for the preceding two (2) years;
“d) all bank statements for all accounts for Old Elam Baptist Church for the preceding two (2) years;
“e) any and all evidence of certificates of deposit, money market funds, or other investments maintained on behalf of the Old Elam Baptist Church for the preceding two (2) years;
“f) all minutes of meetings of the trustees, directors and/or deacons of Old Elam Baptist Church for the preceding two (2) years;
“g) all minutes of meetings of all committees of Old Elam Baptist Church for the preceding two (2) years;
“h) all records of deposits, offerings collected at church services for the preceding two (2) years;
“i) all donations, endowments or other records indicating sources of income paid to Old Elam Baptist Church for the preceding two (2) years.
“You are hereby requested to make the above items available for inspection and copying within ten (10) days from the date of this letter. The inspection and copying of the same shall be performed by a selected group of the concerned members and myself as their attorney.
“Additionally, this letter is to request that the trustees/deacons and/or directors provide any evidence of written authority given by the Board of Trustees, Board of Directors and/or Board of Deacons which would authorize the pastor of the church or any other representative of the Board to prohibit any member from attendance to the church at any and all lawful meetings, events and *1082 worship services undertaken by Old Elam Baptist Church. Approximately five (5) members have been advised that they are no longer authorized to enter onto the premises of Old Elam Baptist Church. The concerned members of the church would like to see the lawful authority under which these instructions have been given.”
The defendants did not comply with the concerned members’ request that they be allowed to inspect the Church’s records.[2] On July 18, 2005, Robert Fuller, as the “designated representative” of the concerned members, filed a complaint in the Montgomery Circuit Court, alleging that the plaintiffs had “submitted grievances to [the defendants, but that those] grievances were ignored and/or not acted upon.” The complaint referenced the letters of June 10, 2005; it alleged that the defendants’ June 10 letter was written in response to the June 10 letter of the concerned members. The complaint alleged that the defendants had hand delivered the June 10 letter to 8 or 10 church members and to one nonmember in retaliation “for the [concerned members’] exercise of First Amendment rights.”
The complaint alleged that the defendants — by failing to comply with the request of the concerned members to inspect the records of the Church — had failed to comply with § 10-3A-43, Ala.Code 1975. The complaint sought an injunction (1) requiring the defendants to make available to the plaintiffs for inspection and/or copying the records they had requested in their June 10 letter; and (2) “rescinding] any alleged notice of probationary status and warning of consequential trespass.”
In response, the defendants filed a motion to dismiss, asserting, among other things, that the trial court did not have subject-matter jurisdiction to adjudicate the claims of the plaintiffs. The defendants also filed an answer and a counterclaim.
The trial court scheduled a hearing for September 29, 2005, to consider the defendants’ motion to dismiss. The plaintiffs then filed a reply to the defendants’ counterclaim and a response to the defendants’ motion to dismiss. The defendants, in response, filed an “objection” to the plaintiffs’ reply and response; the defendants asserted that the plaintiffs’ filings were, in substance, an improper attempt to amend their initial complaint.
The trial court held a hearing on September 29, 2005, and attorneys for the parties presented oral arguments regarding the defendants’ motion to dismiss. At the conclusion of that hearing, the trial court stated that it was denying the defendants’ motion to dismiss. The court then scheduled a hearing for November 4, 2005, and scheduled the matter for a nonjury trial on November 8, 2005.
On October 7, 2005, the plaintiffs filed an “amended complaint for declaratory relief and injunction.” The amended complaint set forth new allegations regarding the propriety of certain alleged real-property transactions by the Church. The amended complaint did not, however, seek judicial review of those alleged transac *1083 tions; instead, the amended complaint cited those new allegations as additional reasons to justify the plaintiffs’ request to be allowed to inspect the Church’s records under § 10-3A-43, Ala.Code 1975.
The amended complaint also included as an attachment a list with the names of many of the estimated 80 individuals constituting the concerned members. The amended complaint acknowledged that Fuller had been “disassociated” from the Church by the defendants’ letter of June 10, 2005, and it asserted that Fuller represented a “subclass” of approximately 8 to 10 of the plaintiffs who also had been disassociated in a similar manner. The amended complaint contended that the defendants had not abided by the Church’s bylaws in disassociating the “subclass” purportedly represented by Fuller, and it sought an injunction setting aside that disassociation. Moreover, the amended complaint asserted that the bylaws had not been approved by the membership of the Church.
On October 17, 2005, the defendants filed a response and an objection to the amended complaint. Among other things, the defendants argued that, in attempting to amend their complaint, the plaintiffs had not complied with Rule 15, Ala. R. Civ. P.[3] The defendants also argued that the trial court did not have jurisdiction to address the merits of the plaintiffs’ claims, because to do so, the defendants contended, the court would have to:
“[interpret scripture and how the church is suppose[d] to apply it to governing its congregants ...; [interpret [whether] the church complied with its church doctrine in applying scripture ...; and [interpret the church’s Standard Operating Procedure, which has three alternate provisions for expulsion of members!,] ... and, therefore, the court will have to determine who can and cannot be members of a church.”
As authority for their assertion that the trial court did not have jurisdiction to hear the plaintiffs’ claims, the defendants cited this Court’s decision in Lott v. Eastern Shore Christian Center, 908 So.2d 922 (Ala.2005).
On October 20, 2005, the plaintiffs filed a request for the production of documents, which sought the same records the plaintiffs requested in their initial complaint. The defendants filed an objection to that discovery request and argued that the requested documents were not proper for discovery because, the defendants contended, their production was the principal issue in the plaintiffs’ action.
On October 27, 2005, Gilchrist and the Deacons Board passed a “resolution,” which stated:
“RESOLVED, that the Standard Operating Procedure shall be amended to include the following as
“Procedure II. Regulations for Deletion from Church Roll (B.)(l.) Pursuant to Biblical Doctrine enumerated and commanded in 1 Corinthians 5:12 through 6:10 any and all members and/or attenders who bring or who are a party to a lawsuit, civil or otherwise, against the Church, its leadership, the Deacons, the Trustees (if any), the Pastor, the Deacons Board *1084 or any other Church Auxiliary and/or the membership shall be immediately placed on probation, -without any further and/or prior notice, and said probation shall operate as a removal from the membership rolls and an abolition of all memberships rights and privileges and shall not be allowed back to the church unless the Pastor makes distinct stipulations otherwise, such as re-granting attendance and premises privileges and the like. This term of probation shall continue until lifted by the Pastor and/or the Deacons’ Board as considered through any internal appeal procedure and/or committee that it shall decide to implement with the final adjudicatory authority vested in the Pastor. This section does not prohibit the leadership and/or the Pastor from pursuing any and all legal remedies and action that they (i.e., the Deacons collectively) and/or he (i.e., the Pastor) believes is necessary and proper to protect the Church an/or [sic] its membership. Said provision is to operate both presently, prospectively, and retroactively.
“RESOLVED, that the Standard Operating Procedure shall be amended to include the following as
“Procedure XIV (6) — Pursuant to Psalm 133:1-3, Proverbs 16:28, Proverbs 20:19, Proverbs 21:23, Proverbs 25:9, Rom[ans] 15:5-6, and in order to protect the unity and privacy/confidence of the Church membership all church records shall remain confidential and shall not be distributed, inspected, viewed, copied, or otherwise viewed by any member, attendee, their agent, or any person without the express consent of both the Pastor and Deacons’ Board. The Pastor and the Deacons’ Board are the sole arbitrator of whether or not there is a proper purpose to grant an exception to this Church rule. This section does not exclude or prohibit the Pastor and/or Deacons’ Board from viewing, distributing, or utilizing said records in the manner they believe necessary and proper for the Pastor and the Deacons’ Board to effectively operate the church in accordance with the Word of God.
“RESOLVED, that any actions previously taken by the Pastor and the Deacon’s [sic] Board of the Church in connection with said Purposes are hereby ratified and approved in all respects.”
The defendants then filed a renewed motion to dismiss the action, asserting, among other things, that the plaintiffs lacked standing and that the trial court did not have subject-matter jurisdiction; as alternative relief, the defendants sought a summary judgment in their favor. A copy of the October 27, 2005, resolution was attached to the defendants’ motion.
On November 2, 2005, the trial court ordered the defendants to bring the financial records of the Church to a hearing scheduled for November 4, 2005. The defendants did not bring the records to that hearing, however, and the trial court entered an order stating:
“After holding a hearing on September 29, 2005, the court orally informed the attorneys that [the] defendants allow counsel for [the] plaintiffs to inspect the financial records of the Old Elam Baptist Church (‘Church’). Two days ago, the court ordered [the] defendants to bring the financial records of the Church to the hearing today. [The] defendants have failed to comply with both orders. [Section 10-3A-43, Ala.Code 1975], allows members of nonprofit corporations to inspect financial records. The court had hoped the parties would have allowed approximately 80 plaintiffs, who *1085 are members of the Church, to inspect said records so that this case could be dismissed.
“The court is well aware that the First Amendment of the United States Constitution and Article 1, Section 8, of the Alabama Constitution forbid courts from adjudicating claims of a spiritual or ecclesiastical nature. However, the courts have jurisdiction concerning questions of civil or property rights. Here the parties, by their stipulation that this Church is organized under the nonprofit corporation laws of the State of Alabama, will have to abide by the Alabama statutes that govern nonprofit corporations. Section 10-3A-43 allows the members of this Church access to the records requested. This controversy (allowing Church members access to financial records) is a civil matter and not a spiritual or ecclesiastical matter.
“It is therefore ORDERED that the defendants, Board of Trustees/Directors and/or Deacons of Old Elam Baptist Church and John Gilchrist, Jr., its Pastor; ... [and] its Secretary/Financial Clerk produce pursuant to [§] 10-3A-43 all financial records of the Church, including, but not limited to, checkbooks, financial statements, bank statements, real estate deeds and any other business records of the church to the Court no later than 9:00 a.m. [on] November 9, 2005.”[4]
The trial court refused to stay its order pending appeal, and the defendants have petitioned this Court for a writ of mandamus directing the trial court to vacate its order and to grant the defendants’ motion to dismiss. The defendants also filed a motion in this Court seeking a stay of the trial court’s order pending our resolution of their petition for a writ of mandamus, which this Court granted.

Standard of Review

“Mandamus review is available where the petitioner challenges the subject-matter jurisdiction of the trial court based on the plaintiffs alleged lack of standing to bring the lawsuit.
“ ““ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a unit of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000).’
“ ‘ “Ex parte Liberty Nati Life Ins. Co., 888 So.2d 478, 480 (Ala.2003) (emphasis added). ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Under such a circumstance, the trial court has ‘no alternative but to dismiss the action.’ 740 So.2d at 1029.” ’
“Ex parte Richardson, 957 So.2d 1119, 1124 (Ala.2006) (quoting Ex parte Chemical Waste Mgmt., Inc., 929 So.2d 1007, 1010 (Ala.2005)).”
Ex parte HealthSouth Corp., 974 So.2d 288, 292 (Ala.2007).

*1086
Discussion

The Church is organized under the Alabama Nonprofit Corporation Act, §§ 10-3A-1 to -225, Ala.Code 1975 (“the Act”).[5] The plaintiffs claim that they are entitled to inspect the records of the Church because § 10-3A-43, Ala.Code 1975, confers upon members of a nonprofit corporation the right to inspect the records of that corporation. The defendants contend, however, that the plaintiffs are not members of the Church and, therefore, that they have no right under § 10-3A-43, Ala. Code 1975, to inspect the records of the Church.
Section 10-3A-43 provides that “[a]ll books and records of a corporation may be inspected by any member, director or officer, or his agent or attorney, for any proper purpose at any reasonable time” (emphasis added). Section 10-3A-2(8) defines a “member” as “[o]ne having membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws ” (emphasis added).
Thus, § 10-3A-2(8) allows a nonprofit corporation to set forth — either in its articles of incorporation or in its bylaws— rules and procedures governing membership in the corporation. The articles of incorporation for the Church do not address membership qualifications. However, the defendants have submitted to this Court, as they did to the trial court, a document entitled “Standard Operating Procedures for Old Elam Missionary Baptist Church” (“the SOPs”). The defendants contend that the SOPs are the bylaws of the Church.[6] The SOPs submitted by the defendants address requirements for membership in the Church, include provisions for the discipline of members, and outline a procedure for removing members from the Church’s membership roll.
The defendants contend that, regardless of whether the plaintiffs were members of the Church at some time in the past, the plaintiffs were not members of the Church at the time the trial court issued the November 4, 2005, order. To support that contention, the defendants rely on certain provisions of the SOPs.
First, the defendants cite the following provision:

“PROCEDURE III

“REGULATIONS FOR CHURCH DISCIPLINE

*1087 “The Pastor shall have the right to place any Officer, Member, or an Entire Ministry, on probationary status. They shall not function in any manner, unless the Pastor makes distinct stipulations.”
(Emphasis added.) The defendants contend that the June 10 letter from the defendants to several of the plaintiffs, which placed the plaintiffs on “probationary status,” suspended the membership rights of those plaintiffs in the Church[7] and therefore abated any right under § 10-3A-43 to inspect the records of the Church.
Second, the defendants rely on the October 27, 2005, resolution passed by Gilchrist and the Deacons Board, which added Procedure II.(B.)(1.) to the SOPs. That procedure provides for the automatic termination of membership rights and for removal from the membership roll of any individual who is a party to a legal action against the Church or its leadership. Based on that provision, therefore, the defendants argue that at the time of the trial court’s order of November 4, 2005, there were no longer any plaintiffs who were members of the Church. Consequently, the defendants argue, this action is due to be dismissed, because, they contend, there is no plaintiff who has standing.
The plaintiffs raise several objections to the argument that they are no longer members of the Church, and we address those objections later in this opinion. However, the plaintiffs do not contend that they would be entitled to inspect the records even ¾/they were no longer members of the Church. That is, the plaintiffs concede that their membership status in the Church at the time of the November 4, 2005, order of the trial court determines whether they have a right to inspect the records. Moreover, the plaintiffs have based their claim of a right to inspect the Church records solely on § 10-3A-43, Ala. Code 1975.[8]
This Court has recognized that an individual’s membership status in a church determines whether he may gain access to *1088 church records under § 10-3A-43, Ala. Code 1975. In Lott v. Eastern Shore Christian Center, supra, William B. Lott, Jr., sued Eastern Shore Christian Center, an Assembly of God church located in Daphne, where he was a member. Like the plaintiffs in this action, Lott asserted that his status as a church member entitled him to inspect the records of the church, in accordance with § 10-3A-43, Ala.Code 1975. 908 So.2d at 924, 927-28. Among other things, Lott sought a declaration that he was entitled to inspect the church records, and he requested a temporary restraining order (“TRO”) preventing “the Church from taking disciplinary action against Lott ... in the form of ‘expulsion from Church membership.’ ” 908 So.2d at 924.
The day after Lott initiated his action, the trial court ruled that Lott was entitled to inspect the church records. 908 So.2d at 924.
“However, the court denied the TRO motion, stating, in part:
“ ‘But I can tell you that this judge isn’t going to get involved in the government of a church, because I don’t think I have any jurisdiction over who is a member, or not a member, or what is contained in the constitution or the bylaws or anything of that nature. So the court is going to deny the application for the TRO respecting the restraining order from the church taking any action against the members to ... discipline [them].’
“(Emphasis added.)
“Meanwhile, that same day, at a meeting of [the Church’s senior pastor] and the other members of the Church’s ‘official board,’1 the board unanimously voted to ‘rescind and withdraw’ the names of Lott and his wife ‘from the current membership roster.’ Lott was informed of the board’s action by a letter dated July 20, 2004.
"1 According to the bylaws of the Church, the board was to be composed of the senior pastor and 'five men of mature Christian experience and knowledge’ elected from the membership of the Church.”
908 So.2d at 925.
Lott responded to the letter by fifing a motion for a rule nisi, requesting the trial court to set aside the action of the board terminating Lott’s church membership. 908 So.2d at 925. Lott filed a second motion for a rule nisi; that motion requested the trial court to hold the church in contempt for refusing to allow him to inspect the church records. The trial court denied both rule nisi motions. Lott appealed from the denial of those motions and from the denial of his motion for a TRO. 908 So.2d at 926-27. This Court affirmed the trial court’s orders.
In discussing the denial of the TRO motion, this Court noted:
“It is undisputed that the Church is incorporated under the Alabama Nonprofit Corporation Act, Ala.Code 1975, §§ 10-3A-1 to -225 (‘the Act’). Lott sought access to the Church’s books and financial records on the basis of § 10-3A-43, which provides:
“ ‘Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its members, board of directors and committees having any of the authority of the board of directors; and shall keep at its registered office or principal office in Alabama a record of the names and addresses of its members entitled to vote, directors and officers. All books and records of a corporation may be inspected by any member, director or officer, or his agent or attorney, for *1089 any proper purpose at any reasonable time’
“(Emphasis added.)
“Lott contends that it was both necessary and proper for the court to issue a TRO to preserve his membership in the Church, and, by extension, his right to inspect the books. ‘Unless the court acted to preserve [his] membership status quo, pending inspection,’ Lott insists, his ‘statutory right to inspect was rendered meaningless.’ Lott’s brief, at 14. The trial court concluded that it had ‘no jurisdiction over the internal workings of a church group’ under the facts of this case. Thus, the issue is whether the trial court exceeded its discretion in refusing to enjoin the Church from expelling Lott after he invoked his rights under § 10-3A-43. We hold that it did not.”
908 So.2d at 927-28.
This Court also rejected the arguments Lott had made in his rule nisi motions. Because “[i]t [was] undisputed that the Church bylaws provide[d] an internal review procedure” that Lott had not utilized, this Court held that Lott could not seek review in a civil court of the membership decision. 908 So.2d at 931 (“It is well established that ‘[a] church member attacking a church decision may not obtain civil court review of that decision without first exhausting the church’s internal appeal procedures.’ ” (quoting Burgess v. Rock Creek Baptist Church, 734 F.Supp. 30, 35 n. 4 (D.D.C.1990))). Further, this Court stated:
“The inability of the trial court to interfere with the disciplinary action resolves Lott’s final contention, that is, that the Church is in contempt because it denied him access to the premises, or to the Church records, on the ground that he is no longer a member. The issue is not whether he has standing to assert a substantive right, but whether that right has been extinguished.
“On appeal, Lott concedes that his statutory right of access to the Church records arises out of his membership .... The inspection rights guaranteed by § 10-3A-43 are specifically limited to ‘any member, director or officer [of the Church], or his agent or attorney.’ (Emphasis added.) Lott does not claim to be a ‘director or officer’ in the Church.
“The trial court could not, consistent with First Amendment jurisprudence, preserve Lott’s membership as this case was procedurally postured. The termination of Lott’s membership abated the right of inspection, pending a final resolution of the membership issue through the Church’s appeal process. A contrary holding would be tantamount to a de facto reinstatement of membership, because it would compel the Church to treat Lott as a member despite his expulsion. This, the trial court could not do.”
908 So.2d at 931.
Applying the principles outlined in Lott to this case, the defendants argue that the trial court did not have jurisdiction to issue its November 4, 2005, order requiring the defendants to allow the plaintiffs to inspect the Church’s records. The defendants contend that the trial court’s order is premised on a finding that the plaintiffs are members of the Church, despite the June 10 letter from Gilchrist and the defendants and despite the automatic-termination provision set forth in the October 27 resolution adopted by Gilchrist and the Deacons Board. Thus, the defendants assert that the order of the trial court is a de facto reinstatement of the plaintiffs’ membership in the Church and is therefore due to be vacated.
*1090 Indeed, the following discussion from Lott makes it clear that the decision of a church to discipline a member or to terminate an individual’s membership is reviewable in a civil court proceeding only under very limited circumstances:
“Courts are constrained by the First Amendment of the United States Constitution from ‘intrud[ing] into a religious organization’s determination of ... ecclesiastical matters such as theological doctrine, church discipline, or the conformity of members to standards of faith and morality.’ Singh v. Singh, 114 Cal. App.4th 1264, 1275, 9 Cal.Rptr.3d 4, 12 (2004) (emphasis added). ‘Of course, [Alabama] courts concerned with restraints under the First Amendment applicable to the states through the Fourteenth [Amendment] are bound by the authoritative interpretations of the First Amendment enunciated by the United States Supreme Court.’ 114 Cal. App.4th at 1280, 9 Cal.Rptr.3d at 16.
“To be sure, this Court has reviewed the actions of churches in expelling members or electing officers. See, e.g., Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331 (Ala.2002); Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1976); In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966). Jurisdiction was exercised in such cases, however, only insofar as ‘to determine whether an election meeting of a church, or a similar meeting, was conducted so improperly as to render its results void.’ Yates, 847 So.2d at 335-36 (the trial court properly invalidated an election of deacons, where the election meeting (1) was irregular in ‘several material respects’; (2) was conducted to circumvent a prior, unap-pealed injunction; and (3) involved no ‘issues of differences in religious faith,’ ‘creed,’ or ‘ecclesiastical doctrine’). See Nixon, supra (in an appeal from the grant of the pastor’s motion to dismiss filed pursuant to Ala. R. Civ. P. 12(b), former church members, alleging that they had been improperly expelled, were entitled to ‘present evidence’ of invalidity or ‘[ir]regularity of the meeting’ in which they were expelled); In re Galilee, supra (court’s inquiry was limited to whether the meeting convened for the pastor’s removal was so irregular as to void the results).
“Under certain circumstances, therefore, our courts have decided whether a church had acted in accordance with its established procedures. It does not follow, however, that a court may interfere in a disciplinary matter before the church acts.
“... A challenge such as this one essentially alleges violation of a substantive right, such as a right to be free from the arbitrary action of an ecclesiastical body. However, the United States Supreme Court has clearly stated that no such right exists. Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich, 426 U.S. 696 (1976).
“In Milivojevich, the Court considered whether the Illinois Supreme Court had properly invalidated the decision of the Holy Assembly of Bishops and the Holy Synod of the Serbian Orthodox Church (‘the Mother Church’) to ‘defrock’ Bishop Dionisije Milivojevich ‘on the ground that [the decision] was “arbitrary” because a “detailed review of the evidence disclose[d] that the proceedings resulting in Bishop Dionisije’s removal and defrockment were not in accordance with the prescribed procedure of the constitution and the penal code of the Serbian Orthodox Church.” ’ 426 U.S. at 718. The Court held ‘that the inquiries made by the Illinois Supreme Court *1091 into matters of ecclesiastical cognizance and polity and the court’s action pursuant thereto contravened the First and Fourteenth Amendments.’ 426 U.S. at 698. In doing so, it explained:
“ ‘The conclusion of the Illinois Supreme Court that the decisions of the Mother Church were “arbitrary” was grounded upon an inquiry that persuaded the Illinois Supreme Court that the Mother Church had not followed its own laws and procedures in arriving at those decisions. We have concluded that whether or not there is room for “marginal civil court review” under the narrow rubrics of “fraud” or “collusion” when church tribunals act in bad faith for secular purposes, no “arbitrariness” exception in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with church laws and regulations is consistent tvith the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense “arbitrary” must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them....
“ ‘Indeed, it is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. Constitutional concepts of due process, involving secular notions of “fundamental fairness” or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance.'’
“426 U.S. at 712-16, 96 S.Ct. 2872 (emphasis added; footnotes omitted). See also Kaufmann v. Sheehan, 707 F.2d 355 (8th Cir.1983); Green v. United Pentecostal Church Int’l, 899 S.W.2d 28 (Tex.Ct.App.1995).
“Milivojevich involved the discipline of a bishop, rather than a church member such as Lott. Nevertheless, ‘[f]or essentially the same reasons that courts have refused to interfere with the basic ecclesiastical decision of choosing the minister ..., this Court must not interfere with the fundamental ecclesiastical concern of determining who is and who is not [a Church] member.’4 Burgess v. Rock Creek Baptist Church, 734 F.Supp. 30, 33 (D.D.C.1990). See also Kral v. Sisters of the Third Order Regular of St. Francis, 746 F.2d 450 (8th Cir.1984); Nunn v. Black, 506 F.Supp. 444, 448 (W.D.Va.) (‘the fact that the local church may have departed arbitrarily from its established expulsion procedures in removing the plaintiffs is of no constitutional consequence, whether one appeals [under] the First, Fifth, or Fourteenth Amendments’), aff'd, 661 F.2d 925 (4th Cir.1981); Caples v. Nazareth Church of Hopewell Ass’n, 245 Ala. 656, 660, 18 So.2d 383, 386 (1944) (‘ “we have no pow *1092 er to revise or question ordinary acts of church membership, or of excision from membership” ’).
“Lott’s motion stated no grounds for a TRO, other than an allegedly intractable disagreement over ‘rights of access [to] and copying [of] Church records.’ In seeking to preempt church discipline on these grounds, the motion for a TRO essentially invited the court to become embroiled in the merits of a ‘fundamental ecclesiastical concern’ with which the courts must have nothing to do, namely, ‘determining who is and who is not [a Church] member.’ Burgess, 734 F.Supp. at 33.
"4 It is generally held that the same considerations apply, regardless of whether the church has a congregational, rather than a hierarchical, form of government. First Baptist Church of Glen Este v. Ohio, 591 F.Supp. 676 (S.D.Ohio 1983); Heard v. Johnson, 810 A.2d 871 (D.C.2002); Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 808 N.E.2d 301 (2004); Tubiolo v. Abundant Life Church, Inc., 167 N.C.App. 324, 605 S.E.2d 161 (2004).”
908 So.2d at 928-31.
Admittedly, the facts in Lott are distinguishable from those in this case — the plaintiff in Lott conceded that he had not exhausted the internal-review procedures of the church, while the plaintiffs in this case dispute that an internal-review procedure exists. The defendants contend, however, that, even assuming no internal-review procedure exists, the trial court could not reverse the decision of Gilchrist and the Deacons Board in adopting the October 27, 2005, resolution to terminate automatically the plaintiffs’ membership without also impermissibly intruding into ecclesiastical matters.
We agree in principle with the arguments of the defendants, but we recognize that those arguments are based on the assumption that the SOPs are the bylaws of the Church. At this stage in the proceedings, we cannot accept that assumption as necessarily true. That is, the factual dispute between the plaintiffs and the defendants concerning the authenticity of the SOPs is not an appropriate question for us to resolve on a petition for a writ of mandamus.
The plaintiffs assert they “are not sure that [the SOPs] were properly passed,” even though the plaintiffs have not offered any evidence suggesting that the SOPs are not in fact the bylaws of the Church. However, the plaintiffs contend that “[without production of the [Church’s] records and/or minutes of the meetings, the [plaintiffs] cannot verify in fact whether proper procedure was followed in adopting [the SOPs] or whether [the SOPs] were something submitted by the Pastor on his own for conduct of his business for the Church.” (Plaintiffs’ brief, p. 8 n. 1.)
The plaintiffs’ arguments in that regard raise a challenge to the authority of the pastor and the Deacons Board to make a membership-termination decision. That is, the defendants’ claim that the plaintiffs’ membership has been terminated is based on powers the defendants contend the SOP and the October 27 resolution confer. By claiming that the SOPs are not in fact the bylaws of the Church and that the October 27 resolution was not validly passed, the plaintiffs are asserting that their membership has not been terminated by the appropriate authority in the Church.
As noted in Lott, under limited circumstances “this Court has reviewed the actions of churches in expelling members .... ” 908 So.2d at 928. One of those circumstances is when a church member challenges whether her “expulsion was the act of the authority within the church having the power to order it.” Abyssinia Missionary Baptist Church v. Nixon, 340 *1093 So.2d 746, 748 (Ala.1976) (emphasis added). In this case, the trial court has jurisdiction for the limited purpose of determining whether the appropriate authority in the Church has terminated the membership of the plaintiffs.[9] Consequently, we deny the defendants’ request that we issue a writ of mandamus directing the trial court to enter an order dismissing the plaintiffs’ action. Like the plaintiffs in Nixon, 340 So.2d at 748, the plaintiffs in this case should have the opportunity to present evidence regarding who has the appropriate membership-termination authority in the Church.
However, we grant the defendants’ petition to the extent it seeks a writ of mandamus directing the trial court to vacate its order stating that the plaintiffs are members of the Church and requiring the defendants to allow the plaintiffs to inspect the Church’s records. Based on the materials before us, we conclude that the trial court could not hold that the plaintiffs are members of the Church, because, assuming that the SOPs are the bylaws of the Church and that the resolution of October 27 was a valid amendment to those bylaws, the plaintiffs’ membership in the Church was terminated before the trial court issued its order of November 4, 2005.
As these proceedings go forward, the trial court should focus its inquiry on whether “the expulsion was the act of the authority within the church having the power to order it.” Nixon, 340 So.2d at 748. In doing so, however, the trial court cannot inquire into or assess the substantive criteria on which those membership-termination decisions are based.[10] Lott, 908 So.2d at 929-31.

*1094
Conclusion

We grant the defendants’ petition for a writ of mandamus to the extent it seeks a writ directing the trial court to vacate its order of November 4, 2005. In all other respects, we deny the petition.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ., concur.
SEE, J., concurs in part and dissents in part.

. It is unclear from the materials submitted to this Court whether this is one entity, two entities, or three entities. The lawyers refer to the petitioner as "the Directors/Deacons," although in various documents submitted with the petition there are references to the "Board of Trustees,” "the Board of Directors,” and "the Board of Deacons.”

. The defendants allege that, in response to the letter of the concerned members, they sent a letter to Madison on June 20, 2005, requesting Madison to identify specifically those members he was claiming to represent. However, in the materials submitted to this Court, the defendants have not included a copy of that letter; consequently, we cannot substantiate whether such a letter exists. See Rule 21(a)(1)(E), Ala. R.App. P. ("The petition [for a writ of mandamus] shall contain ... [c]opies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition.").

. In their mandamus petition to this Court, the defendants note that the trial court did not rule on their assertion that the plaintiffs' amended complaint did not comply with Rule 15, Ala. R. Civ. P. (Petition, pp. 10-11.) However, the defendants do not make an argument to this Court regarding whether the plaintiffs’ amended complaint complied with Rule 15, Ala. R. Civ. P., and, other than a general reference to Rule 15, the defendants have not cited authority in support of their argument that the amended complaint failed to comply with that rule. Consequently, we express no opinion on that issue.

. The trial court's written order is dated November 4, 2005. However, the defendants assert that the trial court did not actually deliver a written order to the parties until November 7, 2005. The defendants acknowledge that the trial court conveyed the substance of the written order to the parties at the hearing on November 4, 2005.

. The articles of incorporation for the Church were filed in 1947, and the parties initially disagreed in the trial court over whether the Church was organized under the Act, which took effect after the Church's articles of incorporation were filed. However, the parties now agree that the Church is organized under the Act, a position supported by § 10-3A-3, Ala.Code 1975, which provides, in part:
"(a) The provisions of this chapter relating to domestic corporations shall apply to:
"(1) All corporations organized hereunder; and
"(2) All nonprofit corporations heretofore organized under any act hereby repealed, for a purpose or purposes for which a corporation might be organized under this chapter.”
See also Commentary to § 10-3A-3 ("Applicability of this act is not elective [;] it is mandatory to all nonprofit corporations. No distinction is made among nonprofit corporations organized and existing under the laws of Alabama on September 12, 1955, nonprofit corporations organized and existing under the [Alabama Nonprofit Corporation Act of 1955, former § 10-3-1 et seq.], and nonprofit corporations organized under this act.... Though reincorporation under this act is possible, it is not a requirement of the continuing validity of any nonprofit corporation organized and existing prior to this act.” (emphasis added)).

. The plaintiffs do not agree that the SOPs are the bylaws of the Church; we address the plaintiffs' arguments in that regard infra.

. It is undisputed that Robert Fuller, the only named plaintiff in the initial complaint filed in this action, received the June 10 letter from the defendants.

. The plaintiffs have made allegations — both in their amended complaint in the trial court and in the materials submitted to this Court— that the deacons and the pastor of the Church engaged in illegal financial transactions or property transfers. Significantly, however, the plaintiffs have offered those allegations only in support of their request under § 10-3A-43, Ala.Code 1975, to inspect the records of the Church. Compare Plaintiffs’ "Amended Complaint for Declaratory Relief and Injunction” (“The [plaintiffs] also requested business records of the [Church] as a result of the concerns of some of the members, pastor and board actions [sic]. Additionally several deacons and the pastor have engaged in transactions where the Church has acquired, mortgaged and sold real property for and to the benefit of the pastor without the membership's consent being provided to the transactions entered into by the trustees and/or pastor of the Church.... Plaintiff[s] [have] sought the business records of the corporation to ascertain whether church funds had been expended for church purposes and in accordance with the laws of the State of Alabama. ... [T]he records are necessary to determine whether or not the Board Members and Pastor obtained the ... [approval of the membership] for the [financial transactions].”) with Plaintiffs' brief, p. 2 ("[The Plaintiffs] requested to inspect and copy records and accounts of the Church for purpose of inquiring into the aforesaid actions of the Church as well as to inquire as to the Church's financial condition.... ”).
The plaintiffs have not, so far as we can determine, attempted to challenge the propriety of those alleged transactions or transfers. Instead, the only relief the plaintiffs have sought is an injunction requiring the Church to reinstate their membership and to allow them to inspect the Church's records.

. If indeed the appropriate authority has terminated the plaintiffs' membership, we are not suggesting that the trial court necessarily has jurisdiction to determine whether such a termination decision was appropriately made.

. That is particularly so in a case such as this one in which the defendants have alleged that the termination of the plaintiffs’ membership was based, at least in part, on matters of Biblical interpretation regarding the resolution of disputes between church members. See, e.g., defendants’ letter dated June 10, 2005 ("The Pastor, in consultation with [the] Deacons board, pursuant to Scripture (1 Corinthians 5:5-12 and Matthew 18:15-17) and the Church's governing document, entitled Standard Operating Procedure (i.e., Procedure 11(B) and Procedure III), hereby place you on probationary status for six (6) months with the stipulation that you not return to the Church property of Old Elam Missionary Baptist Church nor communicate in an evil, slanderous, or libelous manner against the Church or its leaders.”). See also Resolution of October 27, 2005 ("Procedure II. Regulations for Deletion from Church Roll (B.)(l.) Pursuant to Biblical Doctrine enumerated and commanded in 1 Corinthians 5:12 through 6:10 any and all members and/or attenders who bring or who are a party to a lawsuit, civil or otherwise, against the Church, its leadership, the Deacons, the Trustees (if any), the Pastor, the Deacons Board or any other Church Auxiliary and/or the membership shall be immediately placed on probation, without any further and/or prior notice, and said probation shall operate as a removal from the membership rolls and an abolition of all memberships rights and privileges....”).
We cite those Biblical examples not to express any opinion as to their meaning or applicability to this case; rather, we offer them only to show that an inquiry into the substantive criteria on which the defendants contend the membership-termination decision was made would involve the type of review the First Amendment prohibits. Lott, 908 So.2d at 930 (" 'For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense "arbitrary” must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and *1094 that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them ....”' (quoting Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich, 426 U.S. 696, 713, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976))). See also Nunn v. Black, 506 F.Supp. 444, 448 (W.D.Va.) ("the fact that the local church may have departed arbitrarily from its established expulsion procedures in removing the plaintiffs is of no constitutional consequence, whether one appeals [under] the First, Fifth, or Fourteenth Amendments”), aff'd, 661 F.2d 925 (4th Cir.1981); Caples v. Nazareth Church of Hopewell Ass’n, 245 Ala. 656, 660, 18 So.2d 383, 386 (1944) (" 'we have no power to revise or question ordinary acts of church membership, or of excision from membership’ ”).